## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian Wilda, being duly sworn, state as follows:

### Introduction and Agent Background

1. I am a Border Patrol Agent–Intelligence ("BPA-I") with the United States Department of Homeland Security, United States Border Patrol. I have been with the Border Patrol since May 2002. I am currently assigned to the Swanton Sector Intelligence Unit and work in the Newport, Vermont Border Patrol Station ("Newport Station"). I am also assigned as a Taskforce Agent with Homeland Security Investigations.

2. This affidavit is offered in support of an application for criminal complaints. I believe the information described below establishes probable cause that Vilson ISUFAJ (a citizen of Albania and an alien to the United States) entered the United States on December 18, 2022, in violation of 8 U.S.C. § 1325(a) and that Muhamet DEMAJ thereafter transported ISUFAJ in furtherance of his illegal entry, while knowing or recklessly disregarding the fact that ISUFAJ was an alien who had illegally entered the United states, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).

3. The information contained in this affidavit is based upon my training, my experience, my own investigation, and my conversations with other law enforcement officers involved in the investigation. The following is either known to me personally or has been relayed to me by persons having direct knowledge of the events described below. It is meant to set forth probable cause and does not include every fact known to law enforcement about the events described below. Unless otherwise specified, the statements described herein are related in sum and substance and are not intended as direct quotations.

1

## Probable Cause

4. On December 18, 2022, at approximately 5:51 pm, Border Patrol Agents were notified by Swanton Sector Communications ("Dispatch") of possible cross-border illicit activity in the area of North Troy, Vermont. Dispatch observed, via remote surveillance equipment, one individual running south from the international boundary between the United States and Canada along the side of Route 243. One of the still images appears below. Based on the location of the sensor; the individual's clothing, backpack, and expression; and the individual's direction and speed of travel, it seemed probable to responding agents that the individual had illegally entered the United States through the woods near the North Troy Port of Entry (POE).



5. In that area, Route 243 is a north-south road that leads from the North Troy POE approximately three-quarters of a mile into the village of North Troy. Route 243 does not

2

intersect other roads until it meets Dominion Avenue in the town of North Troy. Dominion Avenue runs north from Route 243 and terminates approximately one-quarter mile south of the international border. A map of the area appears below. Agents assigned to the Newport Station are aware that Route 243 and Dominion Avenue have been used extensively by Transnational Criminal Organizations (TCO) in the preceding months to smuggle people into, and transport them within the United States, and to import contraband into the United States from Canada in the preceding year.



6. While responding to the potential illicit activity, a Border Patrol Agent in a marked Border Patrol vehicle passed a Dodge truck, white in color, with Massachusetts license plate 2XLR46 driving south on Route 243 approaching the North Troy fire station, which is at the intersection of Route 243 and Dominion Avenue. The agent turned around and began following the Dodge truck because it had come from the area where the remote camera activation occurred.

3

The agent observed the truck was occupied by two people: the driver and a single passenger seated in the back seat. The agent requested a registration check and border crossing history on the vehicle through Dispatch. Before the requested information was returned, the agent observed the Dodge truck accelerate in a manner he associated with a driver trying to create distance between the vehicles, which he found to be suspicious because he was in a marked Border Patrol vehicle. The agent activated his emergency equipment to initiate a vehicle stop, and the Dodge truck yielded.

7. The agent approached the Dodge truck, identified themselves as a Border Patrol Agent, and questioned the driver as to his citizenship. The driver identified himself as Muhamet DEMAJ and stated that he is a naturalized United States Citizen. DEMAJ stated that the truck was a rental vehicle he had rented in Queens, New York. He claimed to be on his way to the Jay Village Inn, which is located approximately 5 miles south of where the vehicle was stopped. When asked about the individual in the back seat, DEMAJ claimed not to know the person and that he picked the individual up as he was walking down the road.

8. The agent questioned the individual in the back seat as to his citizenship. The passenger did not reply to questions asked in English or Spanish. DEMAJ then informed agents the individual spoke Albanian, and DEMAJ began to translate for him. The passenger, later identified as Vilson ISUFAJ, stated that he was a citizen and national of Albania. He did not have immigration documents that would allow him to legally enter the United States. ISUFAJ admitted that he entered the United States by walking through the woods. Both ISUFAJ and DEMAJ were detained and transported to the Newport Station for processing and further investigation.

9. At the Newport Station, I conducted an interview with ISUFAJ with the assistance of

a telephonic interpreter service. ISUFAJ was read his *Miranda* rights, and he stated he understood his rights and was willing to answer questions without an attorney present.

    a. ISUFAJ was in possession of one cell phone at the time of arrest, and he provided Agents with consent to search it.

    b. ISUFAJ stated that he was born in Albania and was a citizen of Albania. He stated that he left Albania ten days prior due to political affiliations involving his brother. ISUFAJ stated that he first traveled to Macedonia and then Switzerland before traveling to Canada. He stated that he entered Switzerland utilizing a fraudulent Italian passport that he claimed was seized by the Canadian authorities upon his entry there. He stated that he obtained the fraudulent passport at a bus station in Macedonia and paid an unknown individual $500 for it. ISUFAJ stated that he entered Canada through the airport in Toronto, Ontario, Canada.

    c. ISUFAJ stated that he met unknown individuals at a coffee bar in the Toronto area who offered to help him enter the United States. He stated that this coffee bar is frequented by people from Albania who live in, or are visiting, the Toronto area. ISUFAJ stated that all arrangements were made for him regarding his crossing into the United States. He stated that an unknown person transported him from Toronto to the border in a truck and that it was only himself and the driver in the vehicle. ISUFAJ stated that, once at the international border, he was given instructions on where to cross and where to walk. He stated he was told to just wait by the road, and someone would pick him up. ISUFAJ stated that he did not know who this person would be, but he was told that his information was provided to the driver in the United States, including what he looked like and what he was wearing.

  d. ISUFAJ stated that he walked for a short time and then waited by a road for approximately five minutes, at which time a truck arrived, and he got into the back seat. ISUFAJ stated the driver asked him who he was, and he responded; they then left the area in the vehicle. ISUFAJ stated that when they observed the police behind them, the driver told him, "You do not know me." ISUFAJ stated that the driver also said that he knows "my name and where I reside." He stated that the driver said something to the effect of, "If you say you know me, we will have different problems." ISUFAJ stated that the driver told him, "My people know where you are and what you do," and that "something bad will happen." ISUFAJ did not specify that the conversation with the driver occurred in Albanian, but he does not appear to have any English language skills, so it is my belief that it occurred in Albanian.

  e. ISUFAJ stated that the driver was to bring him to New York, where his brother was waiting. ISUFAJ stated that he paid $5000 USD in advance of his crossing to an unknown person; he did not expect to pay any additional money.

10. I attempted to interview Muhamet DEMAJ. Upon being read his *Miranda* rights, DEMAJ stated he understood his rights and requested and attorney. I discontinued the interview.

11. During the interview attempt and his processing, I recognized Muhamet DEMAJ from my previous encounter with him following an incident on April 5, 2022. On that day, agents from the Newport Station interdicted a human smuggling event that occurred on Dominion Avenue in North Troy. A Border Patrol Agent witnessed two subjects—later identified as Albanian citizens—be picked up on Dominion Avenue by an individual driving a white 2016 GL450 Mercedes-Benz with New York License plate KKR-4009. According to New York motor vehicle records, the white Mercedes-Benz was registered to a Muhamet DEMAJ of

6

95 Cox Avenue in Yonkers, New York. Deputy Patrol Agent in Charge (DPAIC) Qualter responded to the area and witnessed the white Mercedes-Benz driving south on Vermont Route 101. DPAIC Qualter activated his emergency equipment, and the white Mercedes-Benz yielded. The vehicle had three subjects in it: a driver, a front passenger, and a rear passenger. It was determined during the stop that the driver of the vehicle was Muhamet DEMAJ and that both passengers—Kristi Shkurti and Anila Shkurti—were citizens and nationals of Albania who possessed no immigration documents that would allow them to enter, remain in, or transit through the United States legally. All three subjects were detained and transported back to the Newport Station for further investigation.

12. The day before, on April 4, 2022, remote video sensors had captured images of the same 2016 white Mercedes-Benz GL450 with New York plate KKR-4009 on Dominion Avenue. The images showed the vehicle driving north on Dominion Avenue and, approximately one minute later, driving south on Dominion Avenue. A concerned citizen had called the Newport Border Patrol Station that day to inform them that a white SUV had just dropped off a subject on Dominion Avenue who then headed north into the tree line.

13. On April 5, 2022, Border Patrol Agents at the Newport Station discovered a rental agreement in the white Mercedes-Benz. The rental agreement showed that DEMAJ had previously rented a grey Mitsubishi Outlander from Yonkers, New York on March 23, 2022; he subsequently returned the Mitsubishi on March 24, 2022. The Newport Station had also received a concerned citizen call on March 24, 2022, which had indicated that a grey SUV had just picked up subjects on Dominion Avenue. A search of remote sensor imagery showed a vehicle consistent with a grey Mitsubishi Outlander on Dominion Avenue on March 24, 2022.

14. After the April 5 incident, investigators contacted several car rental companies to

determine if DEMAJ had rented other vehicles. On February 21, 2022, DEMAJ rented a silver 2020 Infiniti QX80 from Enterprise, which he returned on February 22, 2022. A search of remote sensor imagery showed a vehicle consistent with a silver Infiniti QX80 on Dominion Avenue on February 22, 2022. On March 5, 2022, DEMAJ rented a white Toyota Camry from Avis, which he returned on March 7, 2022. A search of remote sensor imagery showed a vehicle consistent with a white Camry on Dominion Avenue on March 6, 2022. On March 25, 2022, DEMAJ rented a silver Kia Soul from Avis, which he returned on March 26, 2022. A search of remote sensor imagery showed a vehicle consistent with a silver Kia Soul on Dominion Avenue on March 26, 2022. On March 30, 2022, DEMAJ rented a black Ford Explorer from Avis, which he returned on March 31, 2022. A search of remote sensor imagery showed a vehicle consistent with a black Ford Explorer on Dominion Avenue on March 31, 2022.

15. Agents in the Newport Station area of responsibility—including the agent who performed the stop of DEMAJ's Dodge truck on December 18, 2022—were familiar with the ongoing investigation of the smuggling of ethnic Albanians into the United States in that area generally and the use of vehicles with non-Vermont plates for the purpose.

## Conclusion and Request

16. Based on the foregoing, I submit that probable cause exists to believe that Vilson ISUFAJ (a citizen of Albania and an alien to the United States) entered the United States on December 18, 2022, in violation of 8 U.S.C. § 1325(a) and that Muhamet DEMAJ thereafter transported ISUFAJ in furtherance of his illegal entry, while knowing or recklessly disregarding the fact that ISUFAJ was an alien who had illegally entered the United states, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). I request criminal complaints be issued charging them accordingly.

*/s/ Brian Wilda*
BRIAN WILDA
BORDER PATROL AGENT–INTELLIGENCE
DEPARTMENT OF HOMELAND SECURITY

The affiant appeared before me by video conference on this 19th day of December 2022 pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

HONORABLE KEVIN J. DOYLE
United States Magistrate Judge
District of Vermont